IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

---

| | |
|---|---|
| JAMES AND RAE CYR, ) | |
| ) | CV 04-99-BLG-RWA |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | **FINDINGS AND RECOMMENDATIONS** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| ) | **AND ORDER** |
| FARMERS ALLIANCE MUTUAL ) | |
| INSURANCE CO., a Kansas ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |
| --- | |
| FARMERS ALLIANCE MUTUAL ) | |
| INSURANCE CO., a Kansas ) | |
| Corporation, ) | |
| ) | |
| vs. ) | |
| ) | |
| RESERVE CENTRAL INSURANCE ) | |
| AGENCY, d/b/a MONTANA ) | |
| CENTRAL INSURANCE AGENCY, ) | |
| a Montana Corporation, ) | |
| ) | |
| Third party defendant. ) | |
| ) | |

Pending before the Court are motions for summary judgment filed by Plaintiffs and by Defendant Farmers Alliance Mutual Insurance Co. ("FAMI"). The United States Magistrate Judge has considered the briefs and supporting materials submitted by the parties and, pursuant to 28 U.S.C. § 636 (b) (1) (B), recommends that the Court grant and deny the motions, as follows.

I. BACKGROUND

In April of 2001, Plaintiffs owned ten acres of land on Big Horn Road in Huson, Montana. An 1850's vintage cabin was located on the property. Plaintiffs anticipated moving another, newer cabin onto the property and attaching it to the older cabin. The new cabin project was to be financed by Mann Mortgage.

Plaintiffs contacted Brian Porch, their agent at Reserve Central Insurance Agency ("Reserve Central"), about insuring the Big Horn Road property, in connection with financing the purchase of the newer cabin. On May 21, 2001, Reserve Central issued a binder, adding a cabin and 10 acres on Big Horn Road to Plaintiff's FAMI policy AR 063137, which also insured Plaintiffs' primary residence at Huson and a property and cabin in Sanders County, Montana. On June 7, 2001, a change endorsement was issued, "adding a type 1 log home on 10 acres" to the policy. Neither the binder nor the change endorsement expressly stated whether the old or the new cabin was being insured.

When FAMI issued a renewal policy in October of 2001, no coverage was listed for any structure at the Big Horn Road property. On November 2, 2001, Mr. Porch was notified that Principal Residential Mortgage was the new lienholder, and was asked to update Reserve Central's records accordingly. In response, Porch generated a document denominated as an "Insurance Binder" which described the property as "Dwelling: 15315 Big Horn Road, Huson, Montana, 59842." The binder referenced the existing policy, and according to Porch, was merely intended to provide Principal

with notice of the change of records, and not to alter the coverage afforded by the policy already in place.  Again, the binder did not distinguish between the old cabin and the new.

Subsequently, on November 2, 2001, a Change Endorsement was issued, effective October 1, 2001, "adding [a] type 1 log home on 10 acres."  As before, the endorsement did not specify whether the old or the new cabin was being added.

By December of 2001, the new cabin had been moved on to the property but had not yet been connected to the old cabin.  On December 2, 2001, the old cabin was destroyed by a fire. Plaintiffs reported the fire to Reserve Central agent Brian Porch. On December 3, 2001, he denied their claim, advising them that there was no coverage for fire damage to the old cabin under their policy.

Plaintiffs filed this action on June 4, 2004, asserting claims for breach of contract, fraud and violations of the Montana Unfair Trade Practices Act, M.C.A. § 33-18-201 *et seq.*  Plaintiffs insist that they intended to, and did in fact, purchase coverage on the old cabin.  FAMI disagrees, arguing that the old cabin was not even insurable under standard underwriting guidelines, and that the express terms of the policy provided no coverage to structures at the Big Horn Road property.  Plaintiffs further allege that Reserve Central committed fraud and violated the UTPA by misrepresenting the state of their coverage, failing to reasonably investigate their loss before denying coverage, and failing to attempt in good faith to settle their claim when liability was

reasonably clear. Plaintiffs contend that FAMI is liable for Reserve Central's allegedly wrongful acts, and seek compensatory and punitive damages from FAMI.

FAMI moves for summary judgment in its favor at this time, on the grounds that Plaintiffs' fraud and UTPA claims are barred by the applicable statutes of limitation and there is no coverage under the express terms of the policy. Plaintiffs seek summary judgment in their favor on the merits of their claims against FAMI, contending that the undisputed facts show that the elements of their claims for breach of contract, fraud, and violations of the UTPA are met.[1]

## II.  DISCUSSION

Summary judgment is properly granted under Rule 56(c) if "the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>California Architectural Building Prod., Inc. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1468 (9th Cir. 1987). In ruling on a motion for summary judgment, the Court must view the evidence and draw all inferences in a light most favorable to the nonmoving party. <u>T.W. Electrical Services, Inc. v. Pacific Electrical Contractors</u>, 809 F.2d 626, 630-31 (9th Cir. 1987). The moving party must initially present to the Court the basis for its motion, and must demonstrate the absence of any dispute over

---

[1] Reserve Central, although not directly implicated in either motion, has filed a response to Plaintiff's motion and has advised the Court that it does not object to FAMI's motion.

material facts that would preclude summary judgment.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to show that specific facts remain at issue, requiring their submission to a jury.  <u>Kaiser Cement Corp. v. Fischbach & Moore</u>, 793 F.2d 1100, 1103-04 (9th Cir. 1986). With those standards in mind, the Court turns to the merits of the pending motions.

    A.  <u>The Coverage Issue</u>

Plaintiffs seek summary judgment on their breach of contract claim, contending that the existence of coverage on the old cabin (as opposed to the new cabin) cannot reasonably be disputed, for a number of reasons.  First, they argue that since the new cabin was owned by their daughter and son-in-law, Plaintiffs did not even have an insurable interest in the new cabin, and any insurance afforded must have pertained to the old cabin.  Second, Plaintiffs point out that the old cabin was the only structure on the premises at the time the original binder was issued, referring to a dwelling located at the Big Horn Road property in Huson.  In response, Defendant points out that Mr. Porch's understanding of the situation was that Plaintiffs were financing and purchasing the new cabin, and would later gift it to their daughter and son-in-law. Defendant further argues that the binder issued on May 21, 2001, and the change endorsement issued on June 7, 2001, relied upon by Plaintiffs to establish the existence of coverage for the old cabin, actually expired prior to the time of the fire, and that this and other outdated documentary evidence purporting to

establish coverage for a structure at that location is irrelevant for purposes of the present inquiry.

Under the clear and unambiguous provisions of the renewal policy issued in October of 2001, which was in effect at the time of the fire, there was no coverage afforded for any buildings or structures at that location.  Nevertheless, a binder and change endorsement issued thereafter purport, on their faces, to provide coverage for a "dwelling" and a "type 1 log home on 10 acres," respectively.  Neither the binder nor the change endorsement specify which cabin is being referenced, and there is evidence supporting both parties' positions.  Moreover, there are unresolved factual and legal questions concerning the intent and purpose of the "binder" issued on November 2, 2001, which was generated in response to an inquiry by the new lienholder and was not requested by, or even sent to, Plaintiffs or FAMI.

Due to numerous disputed issues of fact concerning the intent of the parties as to which cabin (if any) was to be added to the policy under the binder and change endorsement, summary judgment cannot be granted at this time in favor of either party on the coverage issue[2].

---

[2]   To the extent that FAMI objects to Plaintiff's reliance on various change endorsements and binders on foundational grounds, the objections are overruled.  The change endorsements and binders from both June, 2001 and October/November, 2001, are contained within the documents submitted by FAMI itself in support of its own Motion for Summary Judgment.

B.  UTPA violations

Plaintiffs seek summary judgment in their favor on their claims of "bad faith."  This Court has previously found that as first party claimants, Plaintiffs cannot assert claims for common law bad faith under Montana law in connection with FAMI's handling of their claim.  See Findings and Rec. dated February 9, 2005, at pg. 7; adopted by Order dated February 28, 2005. Their motion, insofar as it refers to "bad faith" claims, must be interpreted to refer to their claims for violations of the UTPA.  Such claims are time barred, to the extent that the violations occurred prior to June 4, 2002, under the 2 year statute of limitation set forth at M.C.A. § 33-18-242(7)(a). Id.[3]  FAMI's motion for summary judgment is based on application of this 2 year limitation period.

1.  Violations of § 33-18-201(6)

First, Plaintiffs allege violations of the statutory duty to attempt in good faith to settle claims for which liability is reasonably clear, under M.C.A. § 33-18-201(6).

As a preliminary matter, the Court will address Plaintiffs' statement that "[t]his Court has saddled plaintiffs with a ruling that puts no time limitation on the handling of a claim" and "because FAMI's duty of good faith and fair dealing never ceases, the statute of limitations for bringing an action under § 33-18-

---

[3]  Plaintiffs argue for application of a three year limitation period under Brewington v. Employers Fire Ins. Co., 992 P.2d 237 (Mont. 2000). However, the three year limitation period only applies to tort claims for breach of the implied covenant of good faith and fair dealing, not claims under the UTPA.

201(4) or (6) never ceases, either." Pls.' Comb. Rep. Br., pgs. 5-6.  Plaintiffs' statements misconstrue the Court's earlier ruling.

In its earlier ruling, the Court recognized the continuing nature of the duty of good faith imposed by § 33-18-201(6), and that it extends beyond the insurer's denial of coverage and governs the insurer's conduct even during the subsequent litigation of coverage issues.  Findings and Rec. at pg. 4, citing Federated Mutual Ins. Co. v. Anderson, 991 P.2d 915, 921-22 (Mont. 1999).  Because Plaintiffs' complaint to the Montana Insurance Commissioner was part and parcel of their ongoing coverage dispute with FAMI, FAMI's obligations during those proceedings were defined by the UTPA, not the common law duty of good faith and fair dealing.

Given the continuing nature of the duty, this Court could not find, in the context of a motion to dismiss, that all violations of the UTPA that may have occurred had necessarily occurred by December 3, 2001, the date coverage was denied.  At this point, however, the case has moved beyond the motion to dismiss stage and is now before the Court on a motion for summary judgment.  The time has come for Plaintiff to direct the Court's attention to facts establishing a violation of the UTPA occurring after June 4, 2002, to survive FAMI's motion for summary judgment.

The Court rejects any suggestion that each day that FAMI stands by its previous denial of coverage and fails to reverse its position, a new breach of its statutory duty of good faith occurs. Absent direct legal authority, which has not been provided to or located by the Court, the Court will not adopt such a view since it

would effectively eviscerate the statute of limitation in any case where an insurer remains steadfast in a denial of coverage.

As for FAMI's conduct in response to inquiries by the Montana Insurance Commissioner's office, Plaintiffs have submitted no evidence to show that FAMI's asserted failure to cooperate occurred after the cutoff date of June 4, 2002.  In fact, the evidence submitted shows that Plaintiffs were informed of FAMI's asserted lack of cooperation by means of a letter from the Insurance Commissioner dated March 27, 2002.  A claim based on such conduct, filed on June 4, 2004, is therefore time-barred under §33-18-242(7)(a).[4]

The remainder of Plaintiffs' claims under § 33-18-201(6) involve conduct that occurred after June 4, 2002, the cutoff date for purposes of applying the statute of limitations.  The Court will address the merits of these claims, in ruling on the parties' motions for summary judgment.  For purposes of this aspect of the parties' motions, the Court will assume that FAMI is liable, under agency principles, for all wrongful conduct of Reserve Central and/or its agents.

First, Plaintiffs contend that FAMI is liable for violation of

---

[4]   Plaintiffs ask that the Court take judicial notice of the official proceedings of the Montana Insurance Commission, its findings and conclusions, pursuant to Fed.R.Evid. 201. Although it is questionable whether the correspondence submitted by Plaintiffs constitutes "official proceedings," "findings," or "conclusions," the Court will take judicial notice of it, not for the truth of the matters contained therein, which are subject to reasonable dispute, but for the existence of the documents, which are not subject to reasonable dispute over their authenticity.

the UTPA based on inconsistencies between the deposition testimony of Brian Porch and Robert Porch.  Again, Plaintiffs have cited no authority for the proposition that such evidentiary discrepancies can form the basis for a claim against an insurer under the UTPA. In any event, Plaintiffs have not established any connection between the minor discrepancy in the agents' deposition testimony and FAMI's asserted breach of an obligation to try to settle Plaintiffs' claim in good faith because liability was reasonably clear.

    Plaintiffs also argue that Reserve Central's conduct during the litigation of this matter, and more specifically its conduct in noticing the depositions of Amber and Erik Armitage, was an attempt to harass and intimidate those witnesses, constituting a violation of the UTPA for which FAMI is liable.  However, the Court previously found that "both parties shared responsibility for the confusion and lack of cooperation that occurred" in connection with the depositions.  Order dated June 6, 2006, pg. 2.  As a matter of law, the Court finds that Reserve Central's conduct did not rise to the level argued by Plaintiffs, and did not constitute a continuing violation of the UTPA, in any event.

    Finally, Plaintiffs point to their attempt to locate counsel to represent them in their claims against the Defendants, and delay caused by Datsopolous, McDonald, and Lind, a law firm in Missoula consulted by them and which they claim had a belatedly disclosed conflict of interest.  Plaintiffs' attempt to hold FAMI liable for violation of its duty of good faith under the UTPA based on the

Datsopolous firm's asserted delay in disclosing its conflict of interest is unfounded, both factually and legally.

    2.  <u>Violations of M.C.A. § 33-18-201(1) and (4)</u>

Plaintiffs have not directed the Court's attention to any alleged misrepresentation of coverage that occurred after June 4, 2002, sufficient to defeat the limitation period for a claim under § 33-18-201(1).

Likewise, Plaintiffs' claim under MCA § 33-18-201(4), based on FAMI's alleged failure to conduct a reasonable investigation before denying Plaintiffs' claim on December 3, 2001, asserts a violation that arose well before the two year cut-off date of June 4, 2002. Plaintiffs have not pointed to any new information or investigative materials that should have been considered by FAMI, but were not, after that date, thereby giving rise to a violation within the period of the statute of limitation.

Based on the 2 year limitation period of M.C.A. § 33-18-242 (7)(a), and the absence of evidence of a new violation of the UTPA occurring after June 4, 2002, the Court finds that summary judgment is properly granted in favor of FAMI on Plaintiffs' claims under the UTPA, and that Plaintiffs' motion for summary judgment on those claims is properly denied.

    C.  <u>Fraud Claims</u>

A two year statute of limitation applies to Plaintiffs' claims for fraud, under M.C.A. § 27-2-203. Plaintiff's fraud claims are based in their entirety on Brian Porch's alleged representations and misrepresentations about the existence of coverage for the old

cabin. Any such representations were necessarily made, and known by Plaintiffs to be false, as of the date coverage was denied for damage caused by the fire: December 3, 2001. The statute of limitations started running on that date, and Plaintiffs' claims, filed on June 2, 2004, were untimely. Summary judgment should be granted in favor of FAMI on Plaintiffs' fraud claims on statute of limitations grounds, and Plaintiffs' motion for summary judgment on those claims should be denied.

    D.  <u>Equitable tolling</u>

In an attempt to save their UTPA and fraud claims from the impact of the applicable statutes of limitation, Plaintiffs argue that the running of the limitation periods should be tolled during the 11 month time period during which they were consulting with a the Datsopolous firm in Missoula about a possible legal action. Equitable tolling of the limitation period in a fraud action has been recognized where the defendant has committed an "affirmative act...calculated to obscure the existence of a cause of action." <u>United Methodist Church v. D.A. Davidson, Inc.</u>, 741 P.2d 794, 798 (Mont. 1987). For purposes of the present motion, the Court will assume that tolling applies in cases under the UTPA, as well. Nevertheless, Plaintiffs have not directed the Court to any affirmative act by these Defendants that obscured the existence of their causes of action for fraud or violations of the UTPA. To the contrary, the undisputed facts show that they were well aware of the facts constituting FAMI's denial of coverage, the scope of the investigation undertaken, and the allegedly fraudulent nature of

any prior representations, well before June 4, 2002.

Despite their knowledge of the facts giving rise to their claims, Plaintiffs argue that their ignorance of the Datsopolous firm's conflict of interest in representing them warrants tolling of the limitation period during the eleven months in which they were consulting with that firm.  This is not the sort of "concealment" that supports tolling of a limitation period, and Plaintiffs' lack of knowledge is not attributable to FAMI, in any event.  Plaintiffs' remedy for the conduct of the Datsopolous firm when it "sat on their case" for 11 months, during which time the limitation periods for Plaintiffs' fraud and UTPA claims were running, lies elsewhere.

### E. Punitive Damages

Because the Court has found that FAMI is entitled to summary judgment on all of Plaintiffs' claims for fraud and violations of the UTPA, it necessarily follows that Plaintiffs' claims for punitive damages against FAMI fail as a matter of law.  M.C.A. § 27-1-220(2)(a). (punitive damages not available on a breach of contract claim).

### III.  RECOMMENDATION

For the foregoing reasons, and pursuant to 28 U.S.C. § 636 (b)(1)(B), the undersigned recommends that the District Court GRANT Defendant FAMI's Motion for Summary Judgment on Plaintiffs' fraud and UTPA claims, on statute of limitation grounds, and GRANT Defendant FAMI's Motion for Summary Judgment on Plaintiffs' claims for punitive damages, and DENY Defendant FAMI's Motion for Summary

Judgment on Plaintiffs' breach of contract claim.

The undersigned further recommends that the Court DENY Plaintiff's Motion for Summary Judgment in its entirety.

The parties shall have ten days from the date of service of these Findings and Recommendation in which to file objections pursuant to 28 U.S.C. § 636 (b) (1) and Rule 72(b), Fed. R. Civ. P..

The Clerk is directed to forthwith notify counsel of record of the making of this Order.

Done and dated this 15th day of August, 2006.

/s/ Richard W. Anderson
Richard W. Anderson
United   States   Magistrate   Judge